NELSON MULLINS RILEY & SCARBOROUGH LLP
RYAN E. COSGROVE, State Bar No. 277907
*ryan.cosgrove@nelsonmullins.com*
19191 South Vermont Avenue, Suite 900
Torrance, CA 90502
Telephone:   (424) 221-7400
Facsimile:    (424) 221-7499

*Attorney for Defendants Tyco Fire Products LP and*
*Chemguard, Inc.*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SACRAMENTO COUNTY WATER AGENCY, <br><br> Plaintiff, <br><br> v. <br><br> 3M COMPANY (f/k/a Minnesota Mining and Manufacturing, Co.); AGC CHEMICALS AMERICAS, INC.; AGC, INC. (f/k/a Asahi Glass Co., Ltd.); ANGUS INTERNATIONAL SAFETY GROUP, LTD; ARCHROMA MANAGEMENT, LLC; ARCHROMA U.S., INC.; ARKEMA, INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT COMPANY; CARRIER GLOBAL CORPORATION; CENTRAL SPRINKLER LLC; CHEMDESIGN PRODUCTS, INC; CHEMGUARD, INC.; CHEMICALS INCORPORATED; CHUBB FIRE, LTD; CLARIANT CORPORATION; CORTEVA, INC.; DEEPWATER CHEMICALS, INC.; JOHN DOE DEFENDANTS 1-49; DUPONT DE | Case No. <br><br><br> **NOTICE OF REMOVAL** <br> **JURY TRIAL DEMANDED** |

1  NEMOURS, INC.; DYNAX
2  CORPORATION; E. I. DUPONT DE
   NEMOURS AND COMPANY; FIRE
3  PRODUCTS GP HOLDING, LLC;
4  JOHNSON CONTROLS
   INTERNATIONAL, PLC; KIDDE PLC,
5  INC.; KIDDE-FENWAL, INC.;
6  NATION FORD CHEMICAL
   COMPANY; NATIONAL FOAM,
7  INC.; RAYTHEON TECHNOLOGIES
8  CORPORATION (f/k/a United
   Technologies Corporation); THE
9  CHEMOURS COMPANY; THE
10 CHEMOURS COMPNAY FC, LLC;
   TYCO FIRE PRODUCTS LP; and UTC
11 FIRE & SECURITY AMERICAS
12 CORPORATION, INC.,

13              Defendants.

14

15        Defendants Tyco Fire Products LP and Chemguard, Inc. (collectively "Tyco"
16 unless identified individually by full name), by and through undersigned counsel,
17 hereby give notice of removal of this action, pursuant to 28 U.S.C. §§ 1332,
18 1442(a)(1), 1441, and 1446, from the Superior Court of the State of California in and
19 for the County of Sacramento, to the United States District Court for the Eastern
20 District of California.  As grounds for removal, Tyco alleges as follows on personal
21 knowledge as to its own conduct and status and on information and belief as to all
22 other matters:

23                    **PRELIMINARY STATEMENT**
24        1.    Plaintiff Sacramento County Water Agency seeks to hold Defendants
25 liable based on their alleged conduct in designing, manufacturing, marketing,
26 distributing, and/or selling products consisting of or containing per- and
27 polyfluoroalkyl substances ("PFAS").  Those products include aqueous film-forming
28 foam ("AFFF"), which was manufactured by Tyco and certain other Defendants.

- 1 -

2. Specifically, Plaintiff alleges that Defendants' products, including AFFF, contained PFAS, including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), and that the use of these products at or near Plaintiff's property caused contamination to water supplies used by Plaintiff.

3. At least some of the AFFF that has contributed to the alleged contamination has been manufactured by a select group of suppliers (including Tyco) in accordance with the military's rigorous specifications ("MilSpec AFFF"). Under the federal "government contractor" defense recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Tyco is immune to tort liability for its design and manufacture of MilSpec AFFF and its provision of warnings for the product. Under the federal officer removal statute, 28 U.S.C. § 1442, Tyco is entitled to remove this action in order to have its federal defense adjudicated in a federal forum. *See Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 810–15 (3d Cir. 2016). Such removal "fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 133 (2d Cir. 2008).

## BACKGROUND

4. This action was filed on January 3, 2022, in the Superior Court of the State of California in and for the County of Sacramento, bearing Case No. 34-2022-00313430. (Ex. A, Complaint). Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(b) and 1441(a) because the Superior Court of the State of California in and for the County of Sacramento is located within the Eastern District of California.

5. Tyco Fire Products LP was served on February 8, 2022. Accordingly, this Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1).

6. Tyco is not required to notify or obtain the consent of any other Defendant in this action to remove this action as a whole under § 1442(a)(1). *See, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Linden*

NOTICE OF REMOVAL

*v. Chase Manhattan Corp.*, 1999 WL 518836, at *1 (S.D.N.Y. July 21, 1999); *Torres v. CBS News*, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. 1994). Nor is Tyco required to notify or obtain the consent of any other Defendant in this action to remove this action under 28 U.S.C. § 1332, as diversity jurisdiction is not the sole basis for removal of this action. *See* 28 U.S.C. § 1446(b)(2)(A).

7.    Plaintiff generally alleges that Defendants, including Tyco, designed, manufactured, marketed, distributed, and/or sold "Fluorosurfactant Products," including AFFF, that contained PFAS, including PFOS, PFOA, and/or their chemical precursors. (Compl. ¶¶ 7–9). Plaintiff alleges that the fluorosurfactant products, including AFFF, were "used, stored, released, and/or disposed of at, near, and/or in the vicinity of Plaintiff's Property, including Plaintiff's water supplies." (*Id.* ¶ 10). Plaintiff further alleges that it has incurred and will incur costs associated with investigating, remediating, removing, treating, and monitoring the contamination of its property. (*Id.* ¶¶ 1, 14).

8.    Plaintiff "seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, filter, dispose of, treat, and monitor the PFOS and PFOA contamination of Plaintiff's Property" allegedly caused by the use of Defendants' products on and near Plaintiff's property. (*Id.* ¶ 14). Plaintiff also seeks any other recoverable damages under state or federal law, restitution for diminution of property value, punitive damages, and attorneys' fees and costs. (*Id*. ¶¶ 14, 148; Prayer for Relief at 33.)

9.    Plaintiff asserts claims against all Defendants for strict liability – defective design – consumer expectation test (*id.* ¶¶ 56–66); strict liability – defective design – risk-benefit test (*id.* ¶¶ 67–75); strict liability – failure to warn (*id.* ¶¶ 76–85); public nuisance (*id.* ¶¶ 86–97); private nuisance (*id.* ¶¶ 98–101); trespass (*id.* ¶¶ 102–09); negligence – manufacturer or supplier – duty to warn (*id.* ¶¶ 110–17); negligence – failure to recall (*id.* ¶¶ 118–29); and liability pursuant to California Civil Code section 1882 (*id.* ¶¶ 130–35). Additionally, Plaintiff asserts one count of

violation of the Uniform Voidable Transfer Act against Defendants E. I. DuPont de Nemours and Company, The Chemours Company, The Chemours Company FC, LLC, Corteva, Inc. and DuPont De Nemours, Inc. (*Id.* ¶¶ 136–47). Plaintiff also seeks punitive damages. (*Id.* ¶ 148; Prayer for Relief at 33).

10. Pursuant to 28 U.S.C. § 1446(d), Tyco is serving a copy of this Notice of Removal upon all other parties to this case and Tyco is filing a copy with the Clerk of the Superior Court of the State of California in and for the County of Sacramento.

11. By filing a Notice of Removal in this matter, Tyco does not waive the rights of any Defendant to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and Tyco specifically reserves the rights of all Defendants to assert any defenses and/or objections to which they may be entitled.

12. Tyco reserves the right to amend or supplement this Notice of Removal.

## <u>REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE, 28 U.S.C. § 1442</u>

13. Removal here is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which provides for removal of an action relating to a defendant's acts undertaken at the direction of a federal officer. Removal is appropriate under this provision where the removing defendant establishes that: (a) it is a "person" within the meaning of the statute; (b) it acted under federal authority; (c) its actions taken pursuant to a federal officer's direction have a causal nexus with plaintiff's claims or injuries or are otherwise related to the lawsuit; and (d) it can assert a "colorable" federal defense. *See Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017); *cf. Mesa v. California*, 489 U.S. 121, 124–25, 129–31, 133–35 (1989); *Papp*, 842 F.3d at 812; *Cuomo v. Crane Co.*, 771 F.3d 113, 115 (2d Cir. 2014); *Hilbert v. McDonnell Douglas Corp.*, 529 F.Supp.2d 187, 196 (D.Mass.2008); *Isaacson*, 517 F.3d at 135; *Durham*, 445 F.3d at 1251.

14. Removal rights under the federal officer removal statute are much broader than under the general removal statute, 28 U.S.C. § 1441. Suits against

defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because § 1442(a)(1) protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prods.*, No. 11 Civ. 5990(BSJ), 2011 WL 5109532, at *3 (S.D.N.Y. Oct. 21, 2011) (citation omitted).  This important federal policy "should not be frustrated by a narrow, grudging interpretation of [§] 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see Durham*, 445 F.3d at 1252.  To the contrary, § 1442 as a whole must be "liberally construe[d]" in favor of removal.  *Papp*, 842 F.3d at 812 (alterations in original) (internal quotation marks omitted).

15.    All requirements for removal under § 1442(a)(1) are satisfied where, as here, the notice of removal alleges that the plaintiff's injuries are caused at least in part by MilSpec AFFF.  *See, e.g.*, *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in AFFF case against Tyco and other manufacturers and holding that, notwithstanding plaintiffs' assertion "that they do not seek resolution of any claims related to MilSpec AFFF[,] . . . Plaintiffs cannot decide what defense Defendants might present"); *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) (denying motion to remand and finding that federal officer removal was proper in a lawsuit against Tyco and other manufacturers of MilSpec AFFF).  The court overseeing the *In re Aqueous Film-Forming Foams Products Liability Litigation* multi-district litigation has also found on multiple occasions that removal under § 1442 is proper where the notice of removal alleges that plaintiffs' injuries are caused, at least in part, by MilSpec AFFF.  *See* Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 103 (D.S.C. May 24, 2019) ("MDL Order 1"), at 3–6; Order, *In re AFFF Prods. Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 320 (D.S.C. Sept. 27, 2019) ("MDL Order 2"), at 3–5; Order, *In re AFFF Prods.*

*Liab. Litig.*, MDL No. 2:18-mn-2873-RMG, ECF No. 325 (D.S.C. Oct. 1, 2019) ("MDL Order 3"), at 3–6. Given its experience with the claims and defenses in AFFF litigation, the MDL Court's holdings clearly demonstrate that this case, too, has been properly removed to federal court.[1]

**A. MilSpec AFFF**

16. Since the 1960s, the United States military has used MilSpec AFFF on military bases, airfields (including Air National Guard facilities), and Navy ships— settings where fuel fires are inevitable and potentially devastating—to train its personnel, put out fires, save lives, and protect property. Indeed, the United States Naval Research Laboratory developed AFFF in response to catastrophic fires aboard the aircraft carriers *USS Forrestal* in 1967 and *USS Enterprise* in 1969.[2] Decades later, the Naval Research Laboratory described the development of AFFF as "one of the most far-reaching benefits to worldwide aviation safety."[3]

17. The manufacture and sale of MilSpec AFFF is governed by rigorous military specifications created and administered by Naval Sea Systems Command. The applicable specification, Mil-F-24385, was first promulgated in 1969, and has been revised a number of times since then.[4] All MilSpec AFFF products must be qualified for listing on the applicable Qualified Products List prior to military procurement. Prior to such listing, a manufacturer's products are examined, tested,

---

[1] Following removal, Tyco intends to designate this action for transfer to the MDL.

[2] *See* Press Release 71-09r, U.S. Naval Research Lab., Navy Researchers Apply Science to Fire Fighting (Oct. 23, 2009), https://tinyurl.com/y2jq4q4w.

[3] U.S. Navy, NRL/MR/1001-06-8951, The U.S. Naval Research Laboratory (1923–2005): Fulfilling the Roosevelts' Vision for American Naval Power 37 (2006) ("Fulfilling the Roosevelts' Vision"), https://permanent.fdlp.gov/gpo125428/roosevelts.pdf.

[4] The 1969 MilSpec and all its revisions and amendments through April 2020 are available at https://tinyurl.com/yxwotjpg.

NOTICE OF REMOVAL

and approved to be in conformance with specification requirements.[5]  The MilSpec designates Naval Sea Systems Command as the agency responsible for applying these criteria and determining whether AFFF products satisfy the MilSpec's requirements.  After a product is added to the Qualified Products List, "[c]riteria for retention of qualification are applied on a periodic basis to ensure continued integrity of the qualification status."[6]  Naval Sea Systems Command reserves the right to perform any of the quality assurance inspections set forth in the specification where such inspections are deemed necessary to ensure supplies and services conform to prescribed requirements.

18.    From its inception until very recently, the MilSpec included the express requirement that MilSpec AFFF contain "fluorocarbon surfactants."    All fluorocarbon surfactants are PFAS, and that category includes PFOA, PFOS, and their chemical precursors—the very compounds at issue in the Complaint here.  This requirement has been in force for virtually the entire time period at issue in the Complaint.    In 2019 the MilSpec removed the modifier "fluorocarbon" from "surfactants," but it expressly states that "the DoD intends to acquire and use AFFF with the lowest demonstrable concentrations of . . . PFOS and PFOA" "[i]n the short term."    PFOA or PFOS are unavoidably present at some concentrations in fluorocarbon surfactants, and the current MilSpec expressly contemplates that AFFF formulations will contain PFOA and PFOS (subject to recently imposed limits).

19.    Plaintiff seeks to recover damages to its property for contamination allegedly caused by "PFOS, PFOA, and/or their chemical precursors [entering] the environment, and migrat[ing] through the soil, sediment, surface water, and groundwater."  (Compl. ¶ 10).  Plaintiff further alleges that "use of Defendants' Fluorosurfactant Products, . . . allowed PFOA, PFOS, and/or their precursor

---

[5] Dep't of Defense SD-6, Provisions Governing Qualification 1 (Feb. 2014), https://tinyurl.com/y5asm5bw.

[6] *Id.*

chemicals to enter into and onto Plaintiff's Property where these compounds migrated through the subsurface and into the groundwater, thereby contaminating the surface water, soil, sediment, and groundwater," (*id.* ¶ 35), and that the purported contamination includes "Plaintiff's water supply source," (*id.* ¶ 10).

20.   Plaintiff alleges that it "owns and operates multiple public water supply systems that supply drinking water to individuals and businesses within [its] service areas throughout Sacramento County." (*Id.* ¶ 3).  MilSpec AFFF has been used and stored at multiple facilities in Sacramento County, including Sacramento International Airport and the former Mather Air Force Base, and therefore accounts for at least a portion of the PFAS contamination about which Plaintiff complains.

21.   Sacramento International Airport is a Part 139 airport.[7]  Part 139 airports are those serving scheduled passenger flights by nine passenger (or larger) aircraft or unscheduled passenger flights by 31 passenger (or larger) aircraft.  *See* 14 C.F.R. § 139.1 (2019).  The federal government requires Part 139 airports to use MilSpec AFFF.  On July 8, 2004, the FAA issued Advisory Circular 150/5210-6D, which stated that "AFFF agents [used by Part 139 airports] must meet the requirements of Mil-F-24385F."[8]  Although the preamble indicated that the circular was for guidance only, on February 8, 2006, the FAA issued a CertAlert clarifying that the MilSpec AFFF requirement was, in fact, mandatory and that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certified under Part 139 must meet [Mil-F-24385F]."[9] The FAA explained: On September 1, 2016, the FAA issued a superseding CertAlert, which reiterated that "Airport operators must ensure any AFFF purchased after July

---

[7] *See* FAA Part 139 Airport Certification Status List (last updated Oct. 13, 2021), available at https://www.faa.gov/airports/airport_safety/part139_cert/.

[8] *See* Advisory Circular 150/5210-6D at 4, Chapter 6, https://tinyurl.com/yxpk87ky.

[9] *See* DOT/FAA/TC-14/22, Impact of Alternative Fuels Present in Airports on Aircraft Rescue and Firefighting Response at 25-26 (Aug. 2014), https://tinyurl.com/rt35dgp.

1, 2006, meets Mil-Spec standards."[10]  Thus, from July 1, 2006 to present, airport operators holding an FAA Airport Operating Certificate have been required to purchase MilSpec AFFF for use.  As a Part 139 airport, Sacramento International Airport is required to use MilSpec AFFF.  Some of that AFFF has been supplied by Tyco.

22.     Additionally, Mather Air Force Base, a former Air Force base and current Superfund site,[11] was required to use MilSpec AFFF.  Since the late 1960s, military facilities, including Mather Air Force Base, have been required to use MilSpec AFFF for suppression of hydrocarbon fuel fires.  Some of that AFFF was supplied by Tyco.

**B.      All the Requirements of 28 U.S.C. § 1442(a)(1) Are Satisfied**

*1.     The "Person" Requirement Is Satisfied*

23.     The first requirement for removal under the federal officer removal statute is satisfied here because Tyco Fire Products LP and Chemguard, Inc. (a limited partnership and corporation, respectively) meet the definition of "persons" under the statute.   For purposes of § 1442(a)(1), the term "person" includes "corporations, companies, associations, firms, [and] partnerships."  *Papp*, 842 F.3d at 812 (quoting 1 U.S.C. § 1); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010); *Isaacson*, 517 F.3d at 135–36.

*2.     The "Acting Under" Requirement Is Satisfied*

24.     The second requirement ("acting under" a federal officer) is satisfied when an entity assists or helps carry out, the duties or tasks of a federal officer.  *Papp*, 842 F.3d at 812.  The phrase "acting under" is to be "liberally construed in favor of

---

[10] Federal Aviation Administration, Cert Alert No. 16-05: Update on Mil-Spec Aqueous Film Forming Foam (AFFF) at 2 (Sept. 1, 2016), https://tinyurl.com/ya5pvbkh.

[11] *See* EPA, Superfund Site: Mather Air Force Base (AC&W Disposal Site), https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.cleanup&id=0902793.

the entity seeking removal." *Sawyer*, 860 F.3d at 255 (internal quotation marks omitted). Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained of conduct was done at the specific behest of the federal officer or agency." *Papp*, 842 F.3d at 813. Rather, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255 (emphasis in original).

25.     The requirement of "acting under" federal office is met here because the effect of Plaintiff's claims, at least in part, is to challenge Tyco's alleged conduct in providing vital products "that, in the absence of Defendants, the Government would have had to produce itself." *Isaacson*, 517 F.3d at 137. MilSpec AFFF is a mission-critical military and aviation safety product that, without the support of private contractors, the government would have to produce for itself. *See Ayo*, 2018 WL 4781145, at *9 (describing MilSpec AFFF as a "mission-critical" and "life-saving product" used by all branches of the U.S. armed forces and NATO members (internal quotation marks omitted)); *cf. Isaacson*, 517 F.3d at 137. The Naval Research Laboratory states that, "[a]lthough [it] was responsible for the original concepts and formulations, it was necessary to elicit the aid of the chemical industry to synthesize the fluorinated intermediates and agents to achieve improvements in formulations."[12] Accordingly, the military has long depended upon outside contractors like Tyco to develop and supply AFFF. *See Chemguard*, 2021 WL 744683, at *3 (holding that Tyco and other AFFF manufacturers were "acting under" a federal officer in connection with the manufacture and sale of MilSpec AFFF); *Ayo*, 2018 WL 4781145, at *8–9 (same); *see also* MDL Order 1, at 3–6 (finding that the "acting under" requirement was satisfied because defendant demonstrated that it was manufacturing AFFF under the guidance of the U.S. military); MDL Order 2, at 3–5;

---

[12] Fulfilling the Roosevelts' Vision, *supra* n.3, at 37.

MDL Order 3, at 3–6 (same).  If Tyco and other manufacturers did not provide MilSpec AFFF, the government would have to manufacture and supply the product itself.

26.    In designing, manufacturing, and supplying the MilSpec AFFF at issue, Tyco acted under the direction and control of one or more federal officers. Specifically, Tyco acted in accordance with detailed specifications, promulgated by Naval Sea Systems Command, that govern AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Further, the AFFF products in question were subject to various tests by the United States Navy before and after being approved for use by the military and for inclusion on the Qualified Products List maintained by the DoD.[13]

### 3.    *The Nexus Requirement Is Satisfied*

27.    The third requirement, that the defendant's actions taken under color of federal office have a causal nexus with plaintiff's claims or injuries or be otherwise related to the lawsuit, erects a hurdle that "is quite low."  *Isaacson*, 517 F.3d at 137.[14] To show the required nexus, it is sufficient for a defendant to establish a connection or association between the lawsuit and the federal office.  *Sawyer*, 860 F.3d at 258.

28.    Here, Plaintiff's claims arise at least in part from Tyco's production and sale of AFFF manufactured to military specifications.  Plaintiff alleges that the use of PFAS in AFFF is a source of its injuries.  Tyco contends that the use of such chemicals in MilSpec AFFF was required by military specifications.  The conflict is apparent: MilSpec AFFF was developed by Tyco, and other manufacturers to meet specifications established by the DoD.  The design choices Plaintiff is attempting to impose via state tort law would create a conflict in which Tyco could not comply

---

[13] *See* Dep't of Defense, SD-6, *supra* n.5, at 1.

[14] The "acting under" and "under color of" prongs overlap.  Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

with both the MilSpec and the purported state-prescribed duty of care.  *See Boyle*, 487 U.S. at 509; *see also Ayo*, 2018 WL 4781145, at *9 ("[T]here is evidence of a 'causal connection' between the use of PFCs in AFFF and the design and manufacture of AFFF for the government."); MDL Order 1, at 5–6 ("Here, [Plaintiff]'s claims arise out of use of AFFF products that it claims Tyco manufactured and sold, and for which the U.S. military imposes MilSpec standards. The Court . . . finds that the causation element of federal officer removal is satisfied here."); MDL Order 2, at 5 (finding the causation element of federal officer removal satisfied where Tyco's AFFF products, "for which the military imposes MilSpec standards," were used at several airports); MDL Order 3, at 5–6 (same as to MilSpec AFFF used at a single airport).

29.     Here, Plaintiff's purported injuries arise at least in part from MilSpec AFFF.  The causal connection or relationship between Plaintiff's alleged injuries and Tyco's actions under color of federal office is clear.  It is irrelevant that the Complaint does not expressly contend that Plaintiff has been injured by MilSpec AFFF.  Courts "credit Defendants' theory of the case when determining whether [the] causal connection exists."  *Isaacson*, 517 F.3d at 137; *see also Chemguard*, 2021 WL 744683, at *3 (noting that "Plaintiffs cannot decide what defense Defendants might present").

### 4.     The *"Colorable Federal Defense" Requirement Is Satisfied*

30.     The fourth requirement ("colorable federal defense") is satisfied by Tyco's assertion of the government contractor defense.

31.     At the removal stage, a defendant need only show that its government contractor defense is colorable, *Sawyer*, 860 F.3d at 254; that is, "that the defense was 'legitimate and [could] reasonably be asserted, given the facts presented and the current law.'"  *Papp*, 842 F.3d at 815 (alteration in original) (citation omitted).  "A defendant 'need not win his case before he can have it removed.'"  *Id.* (quoting *Willingham*, 395 U.S. at 407); *see also Isaacson*, 517 F.3d at 139 ("To be 'colorable,'

the defense need not be 'clearly sustainable,' as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." (citation omitted)); *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 54 (D. Mass. 2008) (upon removal, defendant must raise "colorable federal defense").  At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue."  *Cuomo*, 771 F.3d at 116.[15] Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783–84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (alteration in original) (citation omitted).

32.     Under the government contractor defense, the defendant is not liable for the design, manufacture, or warnings of equipment or supplies "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

33.     Tyco has satisfied these elements for purposes of removal.  As discussed above, Naval Sea Systems Command approved reasonably precise specifications, governing MilSpec AFFF formulation, performance, testing, storage, inspection, packaging, and labeling.  Tyco's products appeared on the DoD Qualified Products List, which could have happened only if Naval Sea Systems Command had first

---

[15] *See also Kraus v. Alcatel-Lucent*, No. 18-2119, 2018 WL 3585088, at *2 (E.D. Pa. July 25, 2018) ("A court does not 'determine credibility, weigh the quantum of evidence or discredit the source of the defense' at this stage.  Instead, [the court] only determine[s] whether there are sufficient facts alleged to raise a colorable defense." (internal citation omitted)).

determined that they conformed to the MilSpec.  *See Ayo*, 2018 WL 4781145, at *13 ("[T]here is colorable evidence that Manufacturing Defendants' Mil-Spec AFFF is not a stock product and that the government approved reasonably precise specifications requiring them to use PFCs, including PFOS and PFOA, in their products."); *see also id.* ("There is also colorable evidence . . . that Manufacturing Defendants' AFFF products conformed to the government's reasonably precise specifications."); MDL Order 1, at 5 (finding defendant demonstrated a colorable defense "where it contends that its AFFF products were manufactured according to the U.S. military's MilSpec specifications"); MDL Order 2, at 4 (same, as to Tyco); MDL Order 3, at 5 (same); *see also Chemguard*, 2021 WL 744683, at *4.

34.   Moreover, the government was sufficiently informed regarding alleged product-related "dangers," *Boyle*, 487 U.S. at 512, to exercise its discretionary authority in specifying and procuring MilSpec AFFF.  The military specifications have long included testing protocols and requirements for toxicity, chemical oxygen, and biological demand.  Indeed, it is clear that the United States has long understood that AFFF contains PFAS and may contain or break down into PFOS and/or PFOA; that AFFF constituents can migrate through the soil and potentially reach groundwater; and that it has been reported that this may raise environmental or human health issues.[16]  For example, as early as October 1980, a report supported by the U.S. Navy Civil Engineering Laboratory, U.S. Air Force Engineering Service Center, and the U.S. Army Medical Research and Development Command stated that AFFF contained fluorocarbons and that "[a]ll of the constituents resulting from fire fighting exercises are considered to have adverse effects environmentally."[17]  By no

[16] *See, e.g.*, EPA, *Revised Draft Hazard Assessment of Perfluorooctanoic Acid and Its Salts* 1–6 (Nov. 4, 2002).

[17] *See* Edward S. K. Chian et al., *Membrane Treatment of Aqueous Film Forming Foam (AFFF) Wastes for Recovery of Its Active Ingredients* 1 (Oct. 1980), https://apps.dtic.mil/dtic/tr/fulltext/u2/a136612.pdf.

NOTICE OF REMOVAL

later than 2001, DoD was aware of data purportedly showing PFAS compounds in MilSpec AFFF to be "toxic" and "persistent."   In 2002, the United States Environmental Protection Agency issued a draft hazard assessment for PFOA, which reviewed in detail, among other data, human epidemiological studies and animal toxicology studies pertaining to alleged associations between PFOA and cancer. More recently, in a November 2017 report to Congress, the DoD acknowledged the concerns raised by the EPA regarding PFOS and PFOA.   Nonetheless, it still described AFFF containing PFOS or PFOA as a "mission critical product [that] saves lives and protects assets by quickly extinguishing petroleum-based fires."[18]   Indeed, Naval Sea Systems Command continues to require that MilSpec AFFF contain "surfactants," and recognizes that PFAS, including PFOS and PFOA, will be present (subject to recently imposed limits for PFOS and PFOA) in AFFF formulations.[19] *See Ayo*, 2018 WL 4781145, at *12 ("That the DoD knows of the alleged risks of PFC-based AFFF products but continues to purchase them supports the position that the government approved reasonably precise specifications for the claimed defective design."); MDL Order 1, at 5 ("As to whether [defendant] adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware, [defendant] points to materials such as a November 2017 Department of Defense report to Congress, in which the agency acknowledged the [EPA]'s stated concerns with PFOS/PFOA in drinking water . . . .").

35.   At minimum, these facts constitute colorable evidence that Naval Sea Systems Command "made a discretionary determination" regarding the formulation of MilSpec AFFF after weighing the fire-suppression benefits against the alleged

---

[18] Dep't of Defense, *Aqueous Film Forming Foam Report to Congress* 1–2 (Oct. 2017) (pub. Nov. 3, 2017), https://tinyurl.com/wshcww4.

[19] *See* MIL-PRF-24385F(SH), Amendment 4, § 6.6 & Tables I, III (2020), https://quicksearch.dla.mil/qsDocDetails.aspx?ident_number=17270; *see also* David Vergun, *DOD Officials Discuss Fire-Fighting Foam Replacement, Remediation Efforts* (Sept. 16, 2020), https://tinyurl.com/ty5ku8hp.

risks. *See Twinam v. Dow Chem. Co.* (*In re "Agent Orange" Prod. Liab. Litig.*), 517 F.3d 76, 90 (2d Cir. 2008); *see also Albrecht*, 2011 WL 5109532, at *5 ("A defendant is not required to warn the government where 'the government knew as much or more than the defendant contractor about the hazards of the product.'" (citation omitted)). Where, as here, the government has exercised "discretionary authority over areas of significant federal interest such as military procurement," the government contractor defense applies. *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d at 89–90; *see also Ayo*, 2018 WL 4781145, at *13.

36.   Tyco's use of PFAS in MilSpec AFFF was required by military specifications.  By seeking to impose tort liability on Tyco for alleged injuries to Plaintiff that were caused in whole or in part by Tyco's compliance with military specifications, Plaintiff is attempting to use state tort law to attack design choices dictated by the military.  The government contractor defense precludes such an attack. *See Boyle*, 487 U.S. at 509.

## IN THE ALTERNATIVE, REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION

37.   Additionally, in the alternative, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Diversity jurisdiction exists if two requirements are met.  First, the amount in controversy must exceed $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  Second, there must be complete diversity between the plaintiff and the defendants. *See, e.g.*, *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 415 (9th Cir. 2018).  Complete diversity exists if the suit is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."  28 U.S.C. § 1332(a)(3).  There is complete diversity here because Plaintiff is a citizen of California and every Defendant is either a citizen of a different state or a citizen or subject of a foreign state.

38.   For diversity purposes, a corporation is a citizen of "every State or foreign state by which it has been incorporated" as well as "the State or foreign state

where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see, e.g.*, *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). An unincorporated business entity such as an LLC or a partnership "is a citizen of every state of which its owners/members are citizens." *Johnson*, 437 F.3d at 899.; *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990)). An LLC's or partnership's own state of organization and principal place of business thus are "irrelevant" for determining its citizenship. *E.g.*, *Great Am. E&S Ins. Co. v. Palmcrest House, LLC*, 2015 WL 13388247, at *1 n.1 (C.D. Cal. July 17, 2015).

39.     The Complaint alleges that Plaintiff is a special district that was created pursuant to California law and has its principal address in Sacramento, California. (Compl. ¶ 15). Plaintiff is a citizen of California.

40.     None of the Defendants is a citizen of California.

41.     As the Complaint alleges, Tyco Fire Products LP is a "limited partnership." (*Id.*  ¶ 16j). Thus, Tyco Fire Products LP has the same citizenship as its members. Tyco Fire Products LP's partners are Defendant Central Sprinkler LLC and Defendant Fire Products GP Holding, LLC. In turn, these limited liability companies have the citizenship of their members: (i) Defendant Fire Products GP Holding, LLC is wholly owned by its single member, Defendant Central Sprinkler LLC; (ii) Central Sprinkler LLC is wholly owned by its single member, Tyco International Management Company, LLC; (iii) Tyco International Management Company, LLC is wholly owned by its single member, Tyco Fire & Security Holdings LLC; (iv) Tyco Fire & Security Holdings LLC is wholly owned by its single member, Tyco Fire & Security (US) Management, LLC; (v) Tyco Fire & Security (US) Management, LLC is wholly owned by its single member, Johnson Controls US Holdings LLC; (vi) Johnson Controls US Holdings LLC is owned by three foreign members, JIH S.a.r.l., Tyco International Holding S.a.r.l., and Tyco International Finance S.A.; (vii) the ultimate owner, partner, and/or member of each of these three foreign entities is Defendant Johnson Controls International plc; and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(viii) Johnson Controls International plc is a citizen or a subject of a foreign state under 28 U.S.C. § 1332. *See infra* ¶ 49. Thus, Tyco Fire Products LP is a citizen or subject of a foreign state under 28 U.S.C. § 1332.

42.    As the Complaint alleges, Chemguard, Inc. is a corporation that is incorporated in Texas and has its principal place of business in Marinette, Wisconsin. (Compl. ¶ 16h). Therefore, Chemguard, Inc. is a citizen of Texas and Wisconsin.

43.    The Complaint alleges that Defendant 3M Company is a "Delaware corporation" that has its principal place of business in St. Paul, Minnesota. (*Id.* ¶ 16a). 3M is a citizen of Delaware and Minnesota.

44.    The Complaint alleges that Defendant E.I. DuPont De Nemours and Company is a "Delaware corporation" that has its principal place of business in Wilmington, Delaware. (*Id.* ¶ 16b). E.I. Du Pont De Nemours and Company is a citizen of Delaware.

45.    The Complaint alleges that Defendant The Chemours Company is a "Delaware corporation" that has its principal place of business in Wilmington, Delaware. (*Id.* ¶ 16c). The Chemours Company is a citizen of Delaware.

46.    The Complaint alleges that Defendant The Chemours Company FC, LLC is a "Delaware limited liability company" with its principal place of business in Wilmington, Delaware. (*Id.* ¶ 16e). The Chemours Company FC, LLC is a limited liability company and thus has the same citizenship as its members. The sole member of The Chemours Company FC, LLC, is Defendant The Chemours Company, which is a citizen of Delaware. *See supra* ¶ 45. The Chemours Company FC, LLC is a citizen of Delaware.

47.    The Complaint alleges that Defendant DuPont De Nemours, Inc. is a "Delaware corporation" that has its principal place of business in Wilmington, Delaware. (Compl. ¶ 16f). DuPont De Nemours, Inc. is a citizen of Delaware.

48.     The Complaint alleges that Defendant Corteva, Inc. is a "Delaware corporation" that has its principal place of business in Wilmington, Delaware. (*Id.* ¶ 16g).  Corteva, Inc. is a citizen of Delaware.

49.     The Complaint alleges that Defendant Johnson Controls International plc is an "Irish public limited company" and has its principal place of business in Cork, Ireland. (*Id.* ¶ 16l).  Johnson Controls International plc is a citizen or subject of a foreign state under 28 U.S.C. § 1332.

50.     The Complaint alleges that Defendant Central Sprinkler LLC is a "Delaware limited liability company."  (*Id.* ¶ 16m).  For the reasons stated in paragraph 41, *supra*, Central Sprinkler LLC is a citizen or subject of a foreign state under 28 U.S.C. § 1332.

51.     The Complaint alleges that Defendant Fire Products GP Holding, LLC is a "Delaware limited liability company." (*Id.* ¶ 16n).  For the reasons stated in paragraph 41, *supra*, Fire Products GP Holding, LLC is a citizen or subject of a foreign state under 28 U.S.C. § 1332.

52.     The Complaint alleges that Defendant Kidde-Fenwal, Inc. is a "Delaware corporation" and has its principal place of business in Ashland, Massachusetts. (*Id.* ¶ 16o).  Kidde-Fenwal, Inc. is a citizen of Delaware and Massachusetts.

53.     The Complaint alleges that Defendant Kidde PLC, Inc. is a "Delaware corporation" that has its principal place of business in Farmington, Connecticut.  (*Id.* ¶ 16p).  Kidde PLC., Inc. is a citizen of Delaware and Connecticut.

54.     The Complaint alleges that Defendant Chubb Fire, Ltd. is a "foreign private limited company" with offices in Ashford, Middlesex, United Kingdom. (*Id.* ¶ 16q).  "UK 'limited' companies are not treated as LLCs," but are "'treated as corporations for the purposes of diversity,'" and thus are citizens of their state of organization and principal place of business. *210 Brands Inc. v. Canterbury of N.Z. Ltd.*, 2020 WL 7773892, at *4 (C.D. Cal. Dec. 29, 2020) (quoting *SHLD, LLC v. Hall*, 2015 WL 5772261, at *2 (S.D.N.Y. Sept. 29, 2015)).  Accordingly, Chubb Fire, Ltd.

is a U.K. entity with its principal place of business in the United Kingdom, and is a citizen or subject of a foreign state under 28 U.S.C. § 1332.

55.   The Complaint alleges that Defendant UTC Fire & Security Americas Corporation, Inc. is a "Delaware corporation" that has its principal place of business in Palm Beach Gardens, Florida.  (Compl. ¶ 16r).  UTC Fire & Security Americas Corporation, Inc. is a citizen of Delaware and Florida.

56.   The Complaint alleges that Defendant Carrier Global Corporation is a "Delaware corporation" that has its principal place of business in Palm Beach Gardens, Florida.  (*Id.* ¶ 16s).  Carrier Global Corporation is a citizen of Delaware and Florida.

57.   The Complaint alleges that Defendant Raytheon Technologies Corporation is a "Delaware corporation" that has its principal place of business in Waltham, Massachusetts.  (*Id.* ¶ 16t).  Raytheon Technologies Corporation is a citizen of Delaware and Massachusetts.

58.   The Complaint alleges that Defendant National Foam Inc. is a "Delaware corporation" that has its principal place of business in Angier, North Carolina. (*Id.* ¶ 16u).  National Foam Inc. is a citizen of Delaware and North Carolina.

59.   The Complaint alleges that Defendant Angus International Safety Group, Ltd. is a "foreign private limited company" registered in the United Kingdom with offices in High Bentham, Near Lancaster, United Kingdom.  (*Id.* ¶ 16v).  United Kingdom LLCs are treated as corporations for the purposes of diversity and thus are citizens of their state of organization and principal place of business.  *210 Brands Inc*, 2020 WL 7773892, at *4.  Accordingly, Angus International Safety Group, Ltd. is a U.K. entity that has its principal place of business in the United Kingdom and is a citizen or subject of a foreign state under 28 U.S.C. § 1332.

60.   The Complaint alleges that Defendant Buckeye Fire Equipment Company is an "Ohio corporation" that has its principal place of business in

- 20 -

Mountain, North Carolina.  (Compl. ¶ 16w).  Buckeye Fire Equipment Company is a citizen of Ohio and North Carolina.

61.     The Complaint alleges that Defendant Arkema Inc. is a "Pennsylvania corporation" that has its principal place of business in King of Prussia, Pennsylvania. (*Id.* ¶ 16x).  Arkema Inc. is a citizen of Pennsylvania.

62.     The Complaint alleges that Defendant BASF Corporation is a "Delaware corporation" that has its principal place of business in Florham Park, New Jersey.  (*Id.* ¶ 16y).  BASF Corporation is a citizen of Delaware and New Jersey.

63.     The Complaint alleges that Defendant ChemDesign Products, Inc. is a "Delaware corporation" that has its principal place of business in Marinette, Wisconsin.  (*Id.* ¶ 16z).  ChemDesign Products, Inc. is a citizen of Delaware and Wisconsin.

64.     The Complaint alleges that Defendant Clariant Corporation is a "New York corporation" that has its principal place of business in Charlotte, North Carolina. (*Id.*  ¶ 16aa).  Clariant Corporation is a citizen of New York and North Carolina.

65.     The Complaint alleges that Defendant Chemicals Incorporated is a "Texas corporation" that has its principal place of business in Baytown, Texas.  (*Id.* ¶ 16bb).  Chemicals Incorporated is a citizen of Texas.

66.     The Complaint alleges that Defendant Nation Ford Chemical Company is a "South Carolina corporation" that has its principal place of business in Fort Mill, South Carolina.  (*Id.* ¶ 16cc).  Nation Ford Chemical Company is a citizen of South Carolina.

67.     The Complaint alleges that Defendant AGC Chemicals Americas, Inc. is a "Delaware corporation" that has its principal place of business in Exton, Pennsylvania.  (*Id.* ¶ 16dd).  AGC Chemicals Americas, Inc. is a citizen of Delaware and Pennsylvania.

68.     The Complaint alleges that Defendant AGC, Inc. is a corporation that is "organized under the laws of Japan" and has its principal place of business in Tokyo,

- 21 -

Japan. (*Id.* ¶ 16ee).  AGC, Inc. is a citizen or subject of a foreign state under 28 U.S.C. § 1332.

69.     The Complaint alleges that Defendant Deepwater Chemicals, Inc. is a "Delaware corporation" that has its principal place of business in Woodward, Oklahoma.  (*Id.* ¶ 16ff).  Deepwater Chemicals, Inc. is a citizen of Delaware and Oklahoma.

70.     The Complaint alleges that Defendant Dynax Corporation is a "Delaware corporation" that has its principal place of business in Elmsford, New York.  (*Id.* ¶ 16gg).  Dynax Corporation is a citizen of Delaware and New York.

71.     The Complaint alleges that Defendant Archroma Management, LLC is a "foreign limited liability company registered in Switzerland." (*Id.* ¶ 16hh).  Thus, Archroma Management, LLC has the same citizenship as that of its members.  None of the members of Archroma Management, LLC is a citizen of California or any other state in the United States.  Archroma Management, LLC is a citizen or subject of a foreign state under 28 U.S.C. § 1332.

72.     The Complaint alleges that Defendant Archroma U.S., Inc. is a "Delaware corporation" that has its principal place of business in Charlotte, North Carolina.  (*Id.* ¶ 16ii).  Archroma U.S., Inc. is a citizen of Delaware and North Carolina.

73.     None of the Doe Defendants has been substituted with any named Defendants.  For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded."  28 U.S.C. §1441(b); *see Soliman v. Philip Morris Inc.,* 311 F.3d 966, 971 (9th Cir. 2002) ("The citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant.").  Therefore, the citizenship of the Doe Defendants must be disregarded for diversity purposes.

74.     Because Plaintiff is a citizen of California, and every Defendant is a citizen of a different State or a citizen or subject of a foreign state under 28 U.S.C. § 1332, complete diversity among the parties exists in this action.

75.     The amount in controversy requirement is also satisfied.  The amount in controversy in a case where federal jurisdiction is based on diversity of citizenship must exceed $75,000, exclusive of interest and costs.  28 U.S.C. § 1332.  As the Supreme Court has made clear, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  Although Tyco denies that Plaintiff is entitled to any monetary or other relief, the amount in controversy here is plainly in excess of the jurisdictional minimum.

76.     Although Plaintiff does not state a precise dollar amount in controversy, the allegations in the Complaint show that the damages sought exceed $75,000, exclusive of interest and costs.  Plaintiff, an owner and operator of "multiple public water supply systems" that provide drinking water to individuals and businesses "throughout Sacramento County," seeks to recover "all past, present, and future" damages to its property.  (Compl. ¶¶ 1, 3).  Plaintiff defines this property as its water, water sources, water supplies, wells, piping, distribution system, treatment plants, and related lands, properties, and facilities."  (*Id.* ¶ 4).  Plaintiff seeks multiple categories of "compensatory" damages, including (1) "costs and expenses related to the past, present, and future investigation, sampling, testing, and assessment of the extent of PFAS contamination on and within Plaintiff's Property"; (2) "costs and expenses related to the past, present, and future treatment, filtration, and remediation of PFAS contamination of Plaintiff's Property"; (3) "costs and expenses associated with and related to the removal and disposal of the PFAS contamination from Plaintiff's Property"; and (4) "costs and expenses related to the past, present, and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within Plaintiff's Property."  (*Id.* Prayer for Relief at 33.).  Plaintiff

also seeks consequential damages. (*Id.*). Further, Plaintiff seeks punitive damages and attorneys' fees (*id.*), both of which count toward the amount in controversy. *See, e.g.*, *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (punitive damages); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees).

77.   The foregoing allegations make plain that the amount in controversy here exceeds $75,000, exclusive of interest and costs, and thus that the jurisdictional amount-in-controversy requirement under § 1332(a) is satisfied.

78.   Because there is complete diversity of citizenship between Plaintiff and Defendants, and because the amount in controversy exceeds $75,000, exclusive of interest and costs, this case is subject to removal by Tyco on diversity grounds pursuant to 28 U.S.C. §§ 1332 and 1441.

WHEREFORE, Tyco hereby removes this action from the Superior Court of the State of California in and for the County of Sacramento, to the United States District Court for the Eastern District of California.

Dated: February 28, 2022                    NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ Ryan E. Cosgrove*
Ryan E. Cosgrove

*Attorney for Defendants Tyco Fire Products LP and Chemguard, Inc.*

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 19191 South Vermont Avenue, Suite 900, Torrance, CA 90502. On the date set forth below, I served the within document:

## NOTICE OF REMOVAL; JURY TRIAL DEMANDED

☐ ELECTRONIC - by transmitting via email the document(s) listed above to the email address(es) set forth on the attached service list on this date before 5:00 p.m.

☒ MAIL - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

John P. Fiske
BARON & BUDD, P.C.
11440 West Bernardo Court, Suite 265
San Diego, CA 92127
Tel: (858) 251-7424
Email: jfiske@BaronBudd.com

3M Company
3M Center
Bldg 220-9E-02
Saint Paul, MN 55144-1000

E.I. Du Pont De Nemours Company
974 Centre Road
Wilmington, DE 19805

The Chemours Company
1007 Market Street
P.O. Box 2047
Wilmington, DE 19899

Kidde-Fenwal, Inc.
400 Main Street
Ashland, MA 01721

The Chemours Company FC, LLC
1007 Market Street
Wilmington, DE 19899

ChemDesign Products, Inc.
2 Stanton Street
Marinette, WI 54143

Chemicals Inc.
12321 Hatcherville Road
Baytown, TX 77521

Chubb Fire Ltd.
Littleton Road
Ashford, Middlesex
United Kingdom TW15 1TZ

Clariant Corporation
4000 Monroe Road
Charlotte, NC 28205

- 25 -

National Foam Inc.
141 Junny Road
Angier, NC 27501

Buckeye Fire Equipment Company
110 Kings Road
Kings Mountain, NC 28086

AGC Chemicals Americas, Inc.
55 E. Uwchlan Avenue, Suite 201
Exton, PA 19341

AGC, Inc. f/k/a Asahi Glass Co., Ltd.
1-5-1, Marunouchi,
Chiyada-ku, Tokyo
100-8405 Japan

Archroma Management, LLC
Neuhofstrasse 11
4153 Reinach
Basel-Land, Switzerland

Archroma U.S., Inc.
5435 77 Center Dr., #10
Charlotte, NC 28217

Arkema Inc.
900 First Avenue
King of Prussia, PA 19406

Angus International Safety Group, Ltd.
Station Road
High Bentham, Near Lancaster LA2 7NA
United Kingdom

BASF Corporation
100 Park Avenue
Florham Park, NJ 07932

Corteva, Inc.
974 Centre Road
Bldg 735
Wilmington, DE 19805

Deepwater Chemicals, Inc.
196122 E County Road 40
Woodward, OK 73801

DuPont de Nemours, Inc.
974 Centre Road, Building 730
Wilmington, DE 19805

Carrier Global Corporation
13995 Pasteur Boulevard
Palm Beach Gardens, FL 33418

Dynax Corporation
79 Westchester Avenue
Pound Ridge, NY 10576

Kidde PLC, Inc.
9 Farm Springs Road
Farmington, CT 06032

Nation Ford Chemical Company
2300 Banks Street
Fort Mill, SC 29715

Raytheon Technologies Corporation
f/k/a United Technologies Corporation
870 Winter Street
Waltham, MA 02451

UTC Fire & Security Americas
Corporation, Inc.
13995 Pasteur Blvd.
Palm Beach Gardens, FL 33418

- 26 -

Johnson Controls International PLC
One Albert Quay
Ballintemple, Cork T12 X8N6
Ireland

Central Sprinkler LLC
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Fire Products GP Holding, LLC
c/o C T Corporation System
9360 Glacier Hwy Ste 202
Juneau, AK 99801

     I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on **February 28, 2022**, at Torrance, California.

_____
Judy Carter

NOTICE OF REMOVAL